### PIER *vs.* FINCH and others.

The possession of a rail road passage ticket is *prima facie* evidence that the holder has paid the regular price for it, and of his right to be transported, at some time, between the places specified thereon, on some passenger train. And if it is unmutilated, the presumption is, that it has never been used for that purpose. It is therefore evidence of the agreement or undertaking of the corporation to transport the holder to the place mentioned, on its passenger cars, for a consideration by him paid.

The words "*good this trip only,*" upon a passage ticket, will not limit the undertaking of the company to any particular day, or any specific train of cars. They do not relate to *time,* but to a *journey;* and if the ticket has not been previously used, it entitles the holder to a passage on a subsequent day, as well as on the day it bears date.

THIS action was for an assault and battery alleged to have been committed by the defendants, on the plaintiff, in forcibly putting him out of a passenger car, on the New York and Erie rail road. The defendent Finch was the conductor of the train, and the other defendants, Manville and Curran, were brakemen, who acted as the assistants of the conductor in removing the plaintiff. The plaintiff was put off for refusing to pay his fare. He held, and offered to the conductor, a ticket in the words and figures following: "New York and Erie Rail Road. Corning to Elmira. Please keep this in sight. Good this trip only.   Oct. 19, 1854.

No. 46.                                    G. L. DUNLAP."

On each corner of the ticket was a letter printed, indicating the several divisions of the rail road. The plaintiff offered this ticket to the conductor as evidence of his right to the passage. The other facts are sufficiently stated in the opinion.

The plaintiff was nonsuited on the trial, and appealed from the judgment.

*G. B. Bradley,* for the plaintiff.

*Diven, Hathaway & Wood,* for the defendants.

*By the Court,* JOHNSON, J. The plaintiff, on the 25th of December, 1854, took a seat in one of the passenger cars on the

Pier v. Finch.

New York and Erie rail road, at Corning, for Elmira, and some two or three miles east of Corning, was forcibly put off the train, by the conductor and the other defendants in his employ. The only cause alleged for the removal of the plaintiff from the cars, was his refusal to pay to the conductor his fare for that trip. It appears from the evidence, that when the conductor demanded the fare, the plaintiff produced and offered to him the ticket copied into the case, as evidence of the payment of his fare, and of his right to be carried one trip to Elmira, by the owners of the cars. The ticket was not mutilated, and the plaintiff told the conductor that his wife had purchased it at the office, and that it had not been used by any one.

It also appeared, in connection with this, that it is the custom on the New York and Erie rail road, for the conductor, when the ticket is first shown, to tear off the corner representing the division of the road on which it is first presented. The conductor refused to receive the ticket, on the ground that it was dated several days previous. The plaintiff refused to make any other payment, and was put off. The ticket thus offered bore date the 19th of October, 1854, and it was admitted by the defendants that it had been issued by the authorized agent of the rail road company, and was in the customary form of tickets sold to passengers on that road. It was also admitted by the defendants, that at the date of the ticket the company were running three passenger trains daily each way, over their road between Corning and Elmira. The judge nonsuited the plaintiff, on the ground that the ticket held and presented by him was only evidence of his right to ride in the next passenger train, going from Corning to Elmira, after the purchase of the ticket; or, at all events, the right was limited to the day on which the ticket bore date, and the ticket could not be used on a subsequent day.

The case is not embarrassed by any evidence of the custom of the company or the conductors of the trains, and turns wholly on the construction to be given to the ticket. The possession of the ticket by the plaintiff, was *prima facie* evidence that he had paid the regular price for it, and of his right, at some

Pier v. Finch.

time, to be be transported from Corning to Elmira on some passenger train; and as it was unmutilated, the presumption is, that it had never been used for that purpose. The ticket, then, in the plaintiff's hands, and on which he claimed the right to ride on that occasion, was evidence of the agreement or undertaking of the corporation, to transport him to Elmira on its passenger cars, for a consideration by him paid. And the precise question to be determined is, whether upon the face of the ticket, and by its terms, the undertaking was to carry him on any passenger train on which they could conveniently transport him, and which he might choose to take, at any time subsequent to the purchase of such ticket; or whether the undertaking was limited to some particular train, or within some definite period of time. It does not appear at what time the ticket was purchased by the plaintiff, though the presumption I suppose is, that it was purchased at some time, on the day on which it bears date, but not at at any particular hour of the day. It may have been purchased, for aught we can know or presume, for this purpose, before either of the three trains passed eastward on that day, or after they had all passed. The words which are supposed to limit the undertaking to some specific train of cars or period of time, and the only words which are claimed to have that effect, are "good this trip only." It is quite apparent, I think, that these words have no reference to any particular day or hour whatever. They do not relate to time, but to a journey. "*This trip.*" What trip? A trip, in its ordinary signification, means a journey, jaunt or excursion by some person; and as the ticket is given to the passenger as evidence of his right, "this trip," must be construed to mean the journey such passenger proposes to make, and does not become operative until he undertakes it. When the purchaser commences his trip, and becomes a passenger, the ticket is good for that trip and no other; and at the end of the trip the conductor has the right to demand, and the passenger is bound to surrender, the ticket. The passenger cannot use it for any other trip, and has no longer any right to the possession of it. This construction gives full effect to the language, and works no injury to

any one. A construction which would work a forfeiture of a right, which the plaintiff clearly had, for a valuable consideration paid, and which would enable the corporation to retain the consideration without performing the service, ought not, it seems to me, to be given to this language, if it is fairly and reasonably susceptible of any other. If it is susceptible of two interpretations, that should be preferred which will secure and preserve the rights of both parties, according to all canons for the interpretation of contracts. But I am unable to see how this language can be construed into a limitation in respect to time. If time was intended, it would have been "good this day only," or some specified number of hours or days; but it is a *trip*, and not a time which is mentioned. It is equally difficult, I think, to apply this language to the passage of any particular train of cars over the road. In order to apply it to the passage of a particular train, it is necessary to presume that the ticket was purchased and delivered to the plaintiff when the cars were present, ready to start, which would be a strained and unwarranted presumption. And if it had been intended to limit the performance of the undertaking to the running of any particular train of cars, the more appropriate language obviously would have been "good the next train only," or some other train indicated by the hour of its expected arrival or departure. It will be seen, I think, that "this trip," from Corning to Elmira, refers much more naturally and properly to the journey of the plaintiff, from one point to the other, than to the passage of any particular train of cars over the whole road. It limits the plaintiff's right of passage to the trip which he commences and undertakes to make, under the contract, and his right to the possession of the ticket, to the time when it is customary to surrender it according to the usages on that road. (*See The Northern Rail Road Co.* v. *Page*, 22 *Barb. Rep.* 130.) The language was the same on the ticket in that case. It was held there, that the defendant was bound to surrender his ticket when demanded, according to the established custom, in exchange for the conductor's check, or pay his fare to the conductor. And this was upon the ground that if the defendant

was permitted to retain his check, it would be evidence of his right to another passage, or any number of them, on some future occasion. The precise point here presented was not involved in that case, but the reasoning of the court bears directly upon it. It was not pretended on that occasion, by the conductor, nor is it here, that the plaintiff could not be transported as conveniently by the corporation on that train of cars, as on any one running on the day of the date of the ticket. The ground taken, and on which the plaintiff was ejected, was, that he had no right to a passage on that train, which had been purchased and paid for on some previous day. And this was the ground of the nonsuit. This, in my judgment, was an erroneous interpretation of the undertaking of the corporation, as evidenced by the ticket. The ticket *prima facie,* was evidence of the plaintiff's right to that passage or trip, and the conductor had no right to demand fare and refuse the ticket when offered. It follows that the plaintiff was put off from the train wrongfully, and the action is well brought. The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[CAYUGA GENERAL TERM, June 1, 1857. *Johnson, T. R. Strong* and *Smith,* Justices.]