JOHN H. PARMELEE, Respondent, *v.* DELOS W. CAMERON, Appellant, impleaded with others.

A court of equity will not, in the absence of fraud, or undue influence, interfere to set aside a sale by a legatee of a legacy of a fixed and certain sum of money, payable at a fixed period after the death of the testator with interest, although such sale was made some years before the legacy was due, and for an inadequate consideration; and although the legatee was at the time of the sale a "reckless, dissipated, improvident, and weak-minded young man."

. Such a sale is not within the equity rule, which enables the court to relieve expectant heirs, remainder-men, and reversioners, from disadvantageous bargains, where both the amount or value of the interest sold and the time of its enjoyment are uncertain.

Mere inadequacy of price is not a sufficient ground for avoiding a sale, unless the inadequacy is so gross as to afford presumptive evidence of actual fraud, or is coupled, in fact, with fraud, surprise, ignorance, mistake, delusion, or imbecility.

(Submitted October 5th, 1869, and decided December 22d, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court in the sixth judicial district.

The cause was tried at a Special Term by the court, and the plaintiff had judgment, which was affirmed at General Term. It was an action to set aside an assignment of a legacy by the plaintiff to the defendant.

The facts as found were substantially as follows: The plaintiff had a legacy of $5,000 left him by will, payable five years after the testator's death, with interest. The testator died April 14th, 1857, leaving sufficient personal property to satisfy all bequests. After the plaintiff became of age, the executors advanced to him $913.26. On the 8th of January, 1861, the plaintiff assigned the legacy to the defendant with all the money due or to become due thereon, for $4,000. It was found on the trial, that there was no confidential relation between the parties, nor was the sale procured by any actual fraud or undue influence; but the plaintiff was a reckless, improvident, dissipated, weak-minded and necessitous young man, though not at the time incompetent, by reason

of intoxication or of unsoundness of mind, to make such a sale; he was in debt, pressed for money, and very anxious to sell and realize what he could get; the purchase was made on plaintiff's application and urgent request; that defendant knew when the legacy was payable, that it was worth its face with interest, less the sum advanced to the plaintiff by the executors; that the sum paid was not a fair and adequate consideration; that neither executors, relatives or friends were consulted by the plaintiff, but were entirely ignorant of the sale until it was made; that the executors have since paid defendant the sum paid by him, with interest, and the remainder is under order of the court, in the hands of the treasurer of Madison county.

*S. T. Holmes*, for the appellant, cited *Lawrence* v. *Bayard* (7 Paige, 70); 1 Stor. Eq. Jur., §§ 244, 245, 310 to 313; *Poillen* v. *Martin* (1 Sand, Ch. R., 569); *Howell* v. *Ransom* (11 Paige R., 538); *Wendell* v. *Van Rensselaer* (1 John. Ch., 344); *Gardner* v. *Gardner* (22 Wend. Rep., 526); *Prentice and others* v. *Achorn* (2 Paige, 30); 2 Kent's Com., 7th ed., pp. 563, 564; 2 Parsons' Cont., p. 575, *r*; Chitty's Cont., 8th ed., pp. 134, 135; Story's Cont., §§ 44, 45 ; 1 Story's Eq. Jur., §§ 231, 232, 233 ; 1 Parsons' Cont., 4th ed., 310 to 312, and notes; *Jackson* v. *King* (4 Cowen, 207); *Blanchard* v. *Nestle* (3 Denio, 37); *Stewart* v. *Lispenard* (26 Wend., 255); Willard's Eq., 203 to 205; 2 Johns. Ch., 1, 23 ; 4 Barb. S. C. R., 376; *Voorhees and others* v. *Earl* (2 Hill, 288, 293); *S. & S. R. R. Co.* v. *Row* (24 Wend., 74); Chitty's Cont., 8th Am. ed., 636 and note 3 ; Story's Cont., § 497; 2 Parson's Cont., 278, 279, and notes; *Lamerson* v. *Marvin* (8 Bar., S. C. R., 10); *Goelth* v. *White* (35 Bar. S. C. R., 76).

*Daniel Pratt*, for the respondent, cited Story's Eq. Jur., §§ 334 to 344 ; 1 Fonblanque, 136 ; Hovenden on Frauds, 499, 500, 508; *Shelly* v. *Nash* (3 Madd. Ch., 236); *Gowland* v. *Faria* (17 Ves., 24); *Marsack* v. *Reeves* (6 Mad., 109); *Peacock* v. *Evans* (6 Ves., 514); *Gevigne* v. *Heaton* (1

Brown. Ch., 9); Willard's Eq., 203; *Bowers* v. *Heaps* (3 Ves. & B., 117); *Gregor* v. *Duncan* (2 De Saus, 639); *Roche* v. *O'Brien* (1 B. & Beat., 377); *Wood* v. *Abre* (3 Mad., 424); *Butler* v. *Haskell* (4 Des., 657); *Rutherford* v. *Duff* (id., 350); *Bunch* v. *Bunt* (3 id., 273); *Cook* v. *Clayworth* (18 Ves., 16); *Thurston* v. *Griffith* (1 P. Wms., 320); *Sawley* v. *Hooper* (3 Atk., 378); *Earl of Portsmouth* v. *Taylor* (4 Sim., 182); *Boothley* v. *Boothley* (19 Eng. L. & Eq., 271); S. C., 15 Beav., 212; *Newton* v. *Hunt* (5 Sim., 571); *Bantee* v. *Watson* (3 My. & K., 339); *Edwards* v. *Brown* (2 Coll., 110); *Dunn* v. *Chambers* (4 Barb., 376); 2 Johns. Ch., 1, 24; 7 Mass., 112, 120; 3 Wend., 626; 2 Verm., 346; 7 Cl. & Finnell, 436; 1 Bligh., 594; 13 Price, 758; *Rose* v. *Hemway* (2 P. Wms., 204).

JAMES, J. The General Term having affirmed the judgment of the Special Term, the facts found by the court are the facts upon which the judgment appealed from must be reviewed and determined.

At the death of the testator, the legacy to plaintiff had become absolute and fixed; its amount and day of payment certain; and hence it was not an expectancy or reversionary instrument, uncertain in amount or otherwise, but a fixed, definite right, as capable of being assigned and transferred as a bond and mortgage; and, therefore, in the absence of fraud or undue influence, the sale of such property at an inadequate price, is not a case within the equity rule which enables this court to relieve expectant heirs and reversioners from disadvantageous bargains. The mere fact that the plaintiff was a legatee, and the subject of sale a legacy, is not, of itself, sufficient to bring the case within the aforesaid equity rule. Yet that was the ground on which the court below claimed jurisdiction and based its decision. It said, in substance, as dealings of heirs in reference to their expectancies, and reversioners and remainder-men in reference to their vested property, are subjects of special protection by courts of equity, so the plaintiff in this case stands in a like predicament as a rever-

sioner dealing with the reversion, and the case is within the same rule, and the plaintiff entitled to the same protection. *Peacock* v. *Evans* (16 Vesey, 512), was cited as authority for that position ; but that case, unlike this, was to set aside the sale of a mere expectancy, made by a person approaching near to an incapacity to contract ; and was for the sale of an expectancy for £500, worth at least £1,200, although its true legal value was uncertain, and even in that case, the master of the rolls said, "no difficulty could have arisen in the case, if it had not been that of an expectant heir dealing for his expectancy during his father's life ; to that class of persons this court seems to have extended a degree of protection approaching nearly to an incapacity to bind themselves by any contract."

The rule stated in *Peacock* v. *Evans*, will not be questioned, when applied to a case within the principle which governs it. But the present case is not within that rule. It lacks essential elements which authorize a court to take cognizance and intervene in the protection of an heir or reversioner, when dealing with an expectancy or reversion.

It was said on behalf of the plaintiff, that the rule in *Peacock* v. *Evans* was recognized in *Dunn* v. *Chambers* (4 Barb., 376). That is so, but the law applicable to cases like the present is also stated thus : "It is not enough to induce a court of equity to interfere that a bargain is hard and unreasonable. Every man is presumed to be capable of managing his own affairs, and whether his bargains are wise or unwise, is not ordinarily a legitimate subject of inquiry in a court of either legal or equitable jurisdiction. No principle is better settled than that mere inadequacy of price does not form a distinct ground of equitable relief."

There are cases where there is no positive evidence of fraud, and yet the inequality of the bargain is so gross that the mind cannot resist the inference that it was improperly obtained, as in the case of *Dunn* v. *Chambers* (*supra*), where the property was assigned for one-ninth its value, only a part of which was paid. "In such cases, a court of equity

avoids the bargain, not merely on account of its gross inequality, but because such inequality furnishes the most 'vehement presumption of .fraud.'"

But this was no such case. The inequality of the bargain in this case was not so gross as to establish the presumption of fraud. The sum paid was about three-fourths of the nominal value of the property; and this in the absence of all actual fraud and undue influence. The purchase being made upon the repeated solicitation of the plaintiff, does not bring the case within the rule which enables a court of equity to afford a party relief from his improvident bargains.

Upon the facts, as found, the only ground upon which the plaintiff can ask the court for relief from his bargain was the inadequacy of the price for which he sold his legacy. As I have before said, there is no general rule of equity which relieves a party from hard and unreasonable bargains after they become executed, merely because they are such. On the contrary, mere inadequacy is not a sufficient ground for avoiding a sale, unless the inadequacy is so gross as to afford presumptive evidence of actual fraud, *Osgood* v. *Franklin* (2 John. Ch. Rep., 1), or is attended with actual fraud, surprise, ignorance, mistake, delusion, or imbecility of mind; none of which are claimed in this case. *Caveat emptor* applies both in courts of law and equity. (*Seymour* v. *Delaney*, 3 Cowen, 452.)

I think the judgments below were wrong, and should be reversed.

All the judges concurring, except MASON, J., who was for affirmance.

Judgment reversed.